UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 23-cr-20029 |
| Plaintiff, | Hon. David M. Lawson |
| v. | |
| Dennis Brown, | |
| Defendant. | |
| _____/ | |

**THE UNITED STATES' SENTENCING MEMORANDUM**

**I.     Introduction**

Dennis Brown fraudulently received nearly $45,000 in Covid-19 pandemic unemployment assistance by filing false unemployment insurance claims, including at least one claim that used a victim's name and social security number. Brown now stands convicted of wire fraud and aggravated identity theft, and is to be sentenced.

The United States recommends that a custodial sentence of eight months on Count One for wire fraud, the statutory mandatory consecutive 24 months on Count Two for aggravated identity theft, and three years of supervised release is "sufficient but not greater than necessary" to meet the goals of sentencing under 18 U.S.C. § 3353(a). *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008).

## II.   Facts and Procedural History

### A.   Facts

Between May and July 2020, the defendant participated in an unemployment insurance ("UI") fraudulent scheme that targeted state UI agencies in Arizona and California. (PSR ¶¶ 21–23). The defendant's goal was to obtain unemployment insurance money that he knew he was not eligible to receive. His participation involved submitting applications for UI benefits to state UI agencies in his own name that falsely claimed he had worked in that state and had become unemployed due to the Covid-19 pandemic. (PSR ¶¶ 22 – 23). His participation also involved, in at least one instance, filing a false claim for UI benefits using the name and social security number of another person without lawful authority.

In June 2020, Brown filed a fraudulent claim for unemployment benefits in his own name, over the internet, with Arizona's UI agency. (PSR ¶ 22). In filing the claim, Brown falsely stated that he had been employed in Arizona and had become unemployed in Arizona due to the Covid-19 pandemic. (*Id.*) In truth, Brown never lived in Arizona and was never employed in Arizona. (PSR ¶¶ 22, 75, 81). The Arizona unemployment agency approved Brown's fraudulent claim and disbursed $9,512 in UI funds to Brown via a UI debit card that was mailed to Brown. (PSR ¶ 22). Brown then used the UI debit card to access the fraudulently obtained UI funds, including cash withdrawals at ATMs. (*Id.*)

Similarly, in July 2020, Brown filed a fraudulent UI claim with the California UI agency, using the internet, in which he falsely represented that he had been employed in California and had become unemployed due to the Covid-19 pandemic. (PSR ¶ 23). The California UI agency approved Brown's fraudulent claim and disbursed $15,660 in UI funds onto a UI debit card that was mailed to Brown. (*Id.*) Brown then used the UI debit card to access the fraudulently obtain UI funds, including cash withdrawals at ATMs. (*Id.*)

In addition to the fraudulent UI claims filed in his own name, Brown also filed a fraudulent UI claim via the internet with the Arizona UI agency using the name and social security number of another person without lawful authority. (PSR ¶ 24). The Arizona UI agency approved that fraudulent claim and deposited $19,200 into Brown's personal bank account. (*Id.*)

The total loss amount on these three claims is $44,372. (PSR ¶ 26).

B.  Charging, Plea and Presentence Report

On February 15, 2023, Brown was charged in a two-count Superseding Indictment. Count One charged Brown with wire fraud under 18 U.S.C. § 1341, and Count Two charged him with aggravated identity theft under 18 U.S.C. § 1028A(a)(1). (ECF No. 32). Brown pleaded guilty to both counts on March 8, 2023, with a Rule 11 plea agreement. (PSR ¶ 9). In the Rule 11 plea agreement, the parties agreed on certain guideline provisions, and the government agreed that its

3

sentencing recommendation on Count One would not exceed the top of the defendant's guideline range as determined by the Court. (ECF No. 43, PageID.145 – 46). The Court accepted the guilty plea and took the Rule 11 plea agreement under advisement. (PSR ¶ 9).

The United States has reviewed the presentence report ("PSR"). The advisory guidelines calculation in the PSR includes the guidelines provisions agreed upon in the Rule 11 plea agreement. (PSR ¶¶ 86 - 87). The United States has no outstanding objections to the PSR.

**III.  The 3553(a) Sentencing Factors Support the Recommended Sentence.**

Courts must consider the factors set forth in 18 U.S.C. § 3553(a) in fashioning a sentence that is sufficient but not greater than necessary. An 8-month custodial sentence on Count One, followed by the mandatory consecutive 24-month custodial sentence on Count Two, with three years of supervised release, is an appropriate sentence based on the § 3553(a) factors for this defendant.

　　A.　　<u>The Advisory Guideline Range, 18 U.S.C. § 3553(a)(4)</u>

The goals of the sentencing guidelines are to carry out the objectives of 18 U.S.C. § 3553(a). *See United States v. Rita*, 551 U.S. 338 (2007). "[I]t is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of

sentences that might achieve section 3553(a)'s objectives." *Id.* at 345. Thus, despite being advisory, the applicable guideline range is an important factor.

Indeed, the guidelines "should be the starting point and the initial benchmark" for choosing a defendant's sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). Here, the advisory guideline range is eight to 14 months on Count One. (PSR ¶ 84). By statute, Count Two requires a mandatory 24-month sentence consecutive to the sentence on Count One. (PSR ¶ 84).

The United States' recommendation of eight months plus 24 months yields a total recommendation of 32 months, which is the bottom of the aggregate guideline range as calculated in the PSR. (*Id.*).

B. Just Punishment for the Serious Nature and Circumstances of the Offense, 18 U.S.C. §§ 3553(a)(1) & (a)(2)(A)

The defendant committed two serious crimes. He participated in an unemployment insurance wire fraud scheme that targeted taxpayer-supported benefits during a national health emergency, targeting places where he never lived or worked. In addition, he used another person's personal information to file a fraudulent claim, which he brazenly had directly deposited into his own personal bank account.

A custodial sentence of 32 months total provides just punishment for the nature and circumstances of the defendant's offenses. His use of another person's personal information, by itself, in this scheme is so serious that Congress has

5

mandated a sentence of 24 months, to run consecutive to the sentence for his involvement in the wire fraud scheme. And based on the claims involved and the loss amount, an additional eight months is just punishment for his participation in the unemployment insurance wire fraud scheme here.

Although the loss amount of $44,372 (PSR ¶¶ 96 – 97) may not be among the highest this Court has seen, it should not be taken lightly. It is real money that was fraudulently taken from a program designed to assist people who become unemployed for reasons beyond their control. By participating in this scheme, Brown knowingly took advantage of weaknesses in the claims-approval process to enrich himself. Those weaknesses were in part due to the urgency that state unemployment agencies were under to provide prompt financial assistance to residents in actual need, whose employment was legitimately affected by the Covid-19 pandemic. And by filing false claims, Brown diverted resources (both financial and employees' time) away from legitimate claims during a time of need. A 32-month sentence therefore provides just punishment based on the overall nature and circumstances of the offenses here.

    C.    <u>History and Characteristics of the Defendant, 18 U.S.C. § 3553(a)(1)</u>

There are positives, but also reasons for concern, about Brown's history and characteristics. Together, they support a low-end guideline range sentence.

Among the positives are that Brown has earned his GED, has accepted responsibility for his offenses, and appears to be genuinely involved in his children's lives, including the life of another child whom he considers to be his own, which is commendable. (PSR ¶¶ 72, 74, 75, 80). In addition, he does have some employment history, which is positive. (PSR ¶ 81). But, Brown has had difficulty maintaining his employment, and that is concerning for someone with three young children. (*Id.*).

Also concerning are the number and nature of Brown's contacts with the criminal justice system. To be sure, the instant offenses are Brown's first federal felony convictions. However, this is not the first time Brown has broken the law. In 2013, Brown pleaded guilty to Home Invasion – Second Degree, but received a break with a diversionary sentence under Michigan's Holmes Youthful Trainee Act. (PSR ¶ 43). Worryingly, Brown engaged in new criminal behavior during the diversionary period, but he was able to eventually complete probation after several years. (*Id.*).

Despite completing probation, Brown has had difficulty staying away from trouble. In 2020, Brown was arrested at least four times for various traffic violations, including open intoxicants in a vehicle, no operator's license, and no insurance. (PSR ¶¶ 50 – 55). In addition, Brown committed the instant offenses in 2020. In 2021, Brown was arrested four more times, including for reckless driving, driving while license suspended, police officer fleeing (which was later dismissed), obstructing police (although formal charges were not filed), and carrying a concealed

weapon. (PSR ¶¶ 49, 56–59, 68–69). Brown was placed into a diversionary program following his arrest for carrying a concealed weapon, which he completed, and the case was dismissed. (PSR ¶ 49).

Brown has had ample opportunity to learn from prior mistakes and has been given second chances with diversion. But, unfortunately, Brown has been unable or unwilling to avoid engaging in further criminal behavior. While on bond in his case, Brown had six positive drug tests, mostly for marijuana, but one was positive for opiates and another test was diluted. (PSR ¶ 11). In addition, while on bond in this case, police received a report that Brown engaged in domestic violence, slapping and punching a victim in front of the victim's minor children and also vandalizing a window at the victim's house. (PSR ¶ 11). Following that report, Brown was given another chance to remain on bond in this case. But Brown could not stay away from trouble. Ultimately, his bond was revoked after police recovered a duffle bag with a revolver and a dismantled assault-style rifle that Brown asked his girlfriend to retrieve from the house where the mother of his children lives. (PSR ¶ 13). Police also found an empty gun box and ammunition at Brown's bond address where he was supposed to be living that appeared uninhabitable. (*Id.*).

D. <u>Respect for the Law, 18 U.S.C. § 3553(a)(2)(A)</u>

There is a need for the sentence in this case to promote respect for the law. Brown's decision to submit false UI claims, including using another person's

information, to places where he never lived or worked reflects a deep-seated lack of respect for the law. In addition, as outlined above, Brown had his bond revoked in this case after he tried to get rid of several guns, which occurred after he received a second chance following a domestic violence report. And Brown has been given other chances too, with diversion. In sum, the instant offenses, his performance on bond, his positive drug tests, the domestic violence report, and the duffle bag with guns all show a strong need for the sentence to promote respect for the law. A 32-month custodial sentence hopefully will cure Brown's lack of respect for the law.

  E. <u>Adequate Deterrence and Protecting the Public, 18 U.S.C. § 3553(a)(2)(B) and (C)</u>

A 32-month sentence serves the interests of deterrence and the need to protect the public.

For general deterrence, a 32-month custodial sentence sends an important message that unemployment insurance fraud and aggravated identity theft are very serious crimes and will be punished accordingly, including with significant terms of imprisonment where appropriate, as is the case here.

A 32-month custodial sentence also is needed for individual deterrence. As noted above, Brown has continued to engage in criminal behavior despite diversion and second chance opportunities. Quite simply, he has failed to learn his lesson.

A 32-month sentence also serves the interests of protecting the public. The public deserves to be free from Brown's criminal conduct. A 32-month custodial sentence will provide protection to the public for at least that length of time.

## IV. Conclusion

The United States respectfully recommends a sentence of eight months on Count One, 24-months consecutive on Count Two, and three years of supervised release.

Respectfully submitted,

DAWN N. ISON
UNITED STATES ATTORNEY

*s/ Trevor M. Broad*
Ranya Elzein
Trevor M. Broad
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-0210
Trevor.Broad@usdoj.gov

Dated: June 6, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on June 6, 2023, I electronically filed the foregoing item using the ECF system, which will send notification of such filing to all counsel of record.

*s/ Trevor M. Broad*
Assistant United States Attorney
